*259 OPINION OF THE COURT
John J. Brunetti, J.
I. INTRODUCTION
Defendant moves for sanctions, specifically the assessment of postannouncement delay, for the failure of the People to comply with that portion of this court’s pretrial order which directed routine statutory discovery pursuant to CPL 240.20. The People respond by claiming that this court had no authority whatsoever to issue the pretrial order, and more specifically, had no authority to issue the order directing discovery. Because the order was valid both due to the waiver by the People and by authority of the Uniform Rules for Trial Courts, and because the People concede that the order was intentionally violated, the motion for sanctions is granted.
II. FACTUAL HISTORY LEADING TO ISSUANCE OF THE PRETRIAL ORDER AT ISSUE
By administrative order of the Chief Administrator of the Courts, the Uniform Rules for Courts Exercising Criminal Jurisdiction (22 NYCRR part 200) were in full force and effect at all times material hereto. More specifically this court, sitting as a superior court exercising criminal jurisdiction, was bound to take certain action in accordance with the individual assignment system now in effect in the superior criminal courts of Onondaga County. This court became "the 'assigned judge’ ”. (22 NYCRR 200.11 [c].) In accordance with the responsibilities imposed upon this court by 22 NYCRR 200.12, this court took the following action:
1. At the defendant’s arraignment on January 25, 1996, this court issued an order directing that a "preliminary conference” be held on February 5, 1996.
2. At the arraignment on January 25, 1996, this court handed out an unsigned, proposed pretrial order and directed both parties to become familiar with its contents so that it could be discussed at the pretrial conference set for February 5, 1996, and any problems or objections with respect thereto could be addressed at that time.
3. On February 5, 1996, this court conducted a preliminary conference. Neither party raised any objections to the contents of the pretrial order. This court announced in open court that it was signing the pretrial order dated February 5, 1996 and announced the motion schedule contained therein (motions to *260 be returnable Mar. 15, 1996). Both parties were directed to conform their copies of the order accordingly. The very introduction to that order begins with the words "pursuant to Rule 200.12 of the Uniform Rules for Courts Exercising Criminal Jurisdiction”.
Section I (B) of the pretrial order provided that within 20 calendar days of its issuance (within 20 days of Feb. 5) the People "shall provide the defendant with copies of or an opportunity to inspect all discovery material required to be provided upon demand by C.P.L. § 240.20 (1)”. The order further provided in section I (E) that the failure of the People or the defendant to comply with section I (B), among other sections, could result in the imposition of sanctions pursuant to CPL 240.70 (1) including assessment of postannouncement delay.
At no time prior to, during or after the pretrial conference did the People object in any way, shape or form to the contents of the order. At no time did the People move to vacate the order. The People simply waited until they were facing a sanctions motion to claim, for the very first time, that the order to provide discovery was a nullity.
The subject matter of the preliminary conference was required by law to include, and did include, a timetable for the completion of "discovery” and the filing and hearing of motions. The court’s order directing a motion schedule and discovery was required by and in compliance with section 200.12 which reads, in part, "[a]t the conclusion of the conference, the directions by the court to the parties * * * shall be * * * incorporated in a written court order”. Therefore, this court’s pretrial order was issued under the authority of and in strict conformity with section 200.12. Finally, section 200.12 provides that the failure of any party to comply with the written directive of the court shall result in the imposition of such sanctions as are authorized by law.
III. THE PEOPLE’S POSITION
The People make it clear that there was no oversight. The People state, unequivocally, that they ignored a court order of which they were concededly aware. The People did not move to vacate the order.
This is not a situation where the People assert a lack of understanding of the order to explain an apparently blatant violation of a written court directive. The People do not argue: "We misunderstood. We felt we at least needed a phone call. *261 We’ll arrange for discovery tomorrow”. Instead, the People argue that their defiance of a written directive of a court is justified because the written directive constituted a nullity for which no authority is contained in law. Yet, the People never moved for a protective order pursuant to CPL 240.50, never moved to vacate the pretrial order, and never took an appeal or sought a writ of prohibition. Such claims of invalidity of an order come too late when the penalty for its violation is sought to be assessed. (See, e.g., State of New York v Congress of Racial Equality, 92 AD2d 815, 817 [1st Dept 1983]; Coffey v Orbachs, 22 AD2d 317, 320 [1st Dept 1964].)
IV. THE VALIDITY OF THE PRETRIAL ORDER
A. Facts Demonstrating the People’s Waiver and Consent to . the Order
The requirement of a written demand for discovery contained in CPL 240.20 can be waived by the failure of the People to object to variance of the procedure or by the offer of the People to comply with the statute sua sponte. Both occurred in this case.
Since the CPL provision requiring a written discovery demand is not intended to avoid surprise to the People and the absence of a written demand would not be prejudicial, the initial failure of the People to insist upon a written demand (which is readily apparent from this record) constitutes an irrevocable waiver of the right to insist upon one later when faced with a sanctions motion. Absent some specific claim of prejudice, the written requirement for a motion to inspect and dismiss may be waived by the People by failing to object to a verbal motion. (People v Jennings, 69 NY2d 103.) It necessarily follows that a routine statutory discovery demand is equally waivable by the failure of the People to object to a variance of the procedure provided for in the statute. However, the People did far more than fail to object to a variation, they invited one.
In this case, at the arraignment on the felony complaint in City Court the People offered to waive strict compliance with the requirements of CPL 240.20. The reverse side of the People’s standard notices offers to provide CPL 240.20 routine discovery without a demand upon merely a "written request to the trial assistant”. Notwithstanding the fact that the discovery responsibilities imposed upon the People cannot be limited to a specific "trial assistant” (People v Steadman, 82 NY2d 1), it is nevertheless true that the "trial assistant” did *262 receive not only a written request, but a written directive from this court. The People’s notice offering to provide discovery upon written request to the trial assistant was filed with the court and was not limited to the defense counsel. Upon the defendant’s arraignment before this court an identical notice was served.
While the suggestion by the People that a phone call from defense counsel was all that was necessary might have been a way to evade sanctions, CPL 240.20 (2) is less tolerant. That section provides that the prosecutor shall make a diligent good-faith effort to locate the property "and to cause such property to be made available for discovery”. There is no responsibility imposed by statute upon defense counsel.
In view of the foregoing, the pretrial order of this court was valid based upon the People’s consent to its contents and because the People waived any objection to its issuance for the following reasons:
1. The People waived any right to a strict compliance with CPL 240.20 by the notice offering discovery filed at arraignment in the local criminal court.
2. The People waived any right to a strict compliance with CPL 240.20 by the notice offering discovery filed at arraignment in a superior court.
3. The People waived strict compliance by failing to object at the preliminary conference held in accordance with section 200.12, having had at least six days to review the proposed pretrial order and having been advised by the court to review same and call any problems to the court’s attention at the pretrial conference.
4. The People waived the right to insist on strict compliance with CPL 240.20 by failing to object to the order once it was issued.
5. The People waived their right to attack the order by failing to move to vacate it prior to the motion for the imposition of sanctions.
6. The People waived their right to attack the order by failing to move for a protective order pursuant to CPL 240.50 (1).
7. The People waived their right to attack the order by failing to file a refusal pursuant to CPL 240.35.
B. The Authority of the Chief Administrator of the Courts
Even absent a waiver by the People, the rules under which this court must operate not only authorized, but required the *263 court to issue a written order setting a "timetable for completion of discovery”. (22 NYCRR 200.12.) The broad authority granted in section 200.12 clearly supports the issuance of this court’s pretrial order.
In attacking section 200.12, the People rely on two cases: People v Ramos (85 NY2d 678) and Matter of Catterson v Rohl (202 AD2d 420). Neither is germane to their position.
Ramos (supra) interpreted the language contained in article VI (§ 30) of the New York Constitution to preclude rule making which significantly affects the legal relationship between the litigants by imposing an additional procedural prerequisite not required by statute. (People v Ramos, 85 NY2d, at 687.) No rule may enlarge or abridge rights conferred by statute or impose additional procedural hurdles that impair statutory remedies. (People v Ramos, 85 NY2d, at 688.) These evils are not present in section 200.12 or this court’s pretrial order issued under its authority.
CPL 240.20 creates no right in the People, but rather imposes an obligation upon the People to provide routine discovery. The right created is in the accused, not his accuser. Therefore, section 200.12 does not enlarge or abridge any rights conferred by statute or impose additional procedural hurdles which impair statutory remedies. If anything, it facilitates and enhances the right of discovery.
Catterson (supra) is equally inapplicable. The trial court in Catterson issued discovery orders directing that material not even "discoverable” by statute be turned over "forthwith”, far in advance of trial, and ordered that the People take notes of all interviews. There was no authority for these orders found anywhere in the CPL, so prohibition was properly granted. On the other hand, section 200.12 merely authorizes the court to set a timetable for the People to do what they are required to do by statute. Moreover, CPL 240.50 (1) empowers the court to regulate discovery on its own initiative.
Neither Ramos nor Catterson (supra) impair the presumed validity of section 200.12. If anything, both cases confirm that section 200.12 and the pretrial order pursuant to which it was issued are authorized by law.
V. THE APPROPRIATE SANCTIONS
The Criminal Procedure Law authorizes a variety of sanctions for failure to comply with discovery requirements of article 240. (CPL 240.70 [1].) It is clear from a reading of the *264 Court of Appeals decision in People v Anderson (66 NY2d 529 [1985]) that the appropriate sanction to be imposed in this case is preclusion, not the assessment of postannouncement delay. Only when no alternative sanction to postreadiness assessment of delay is available should such an extreme sanction be imposed. While the failure to provide Grand Jury minutes has been ruled a sufficient violation of a court order to justify the assessment of delay against the People, the Court of Appeals nevertheless prefers "alternative remedies such as * * * preclusion orders * * * [as] suitable alternatives”. (People v McKenna, 76 NY2d 59, 65 [1990].) In McKenna, -it was even suggested by the People that holding the prosecutor in contempt was a suitable alternative. However, the Court of Appeals rejected this notwithstanding a direct violation of a court order by a member of the Bar. (People v McKenna, supra, at 65.)
This court believes that the appropriate remedy is preclusion. (Matter of Santucci v Rotker, 110 AD2d 842 [2d Dept 1985].) The willful and blatant violation of the court’s order is demonstrated by the following excerpts from the People’s affidavit in response to the motion for sanctions:
1. Paragraph 5: "Defendant now relies upon a purported 'pretrial order’ ”. The order is not purported. The practice of a conformed order is observed in courts throughout this State every day. The very denomination of the court order which the People have intentionally violated as "purported” displays a further evidence of willfulness to justify the sanctions imposed in this case.
2. The implication of portions of paragraphs 5, 6, 7 and 8 is that the order was issued in violation of law and in excess of the court’s authority. It is almost as if, prior to preparing their response, the People did not read the introduction to the decretal paragraphs on page 1 of the order: "Pursuant to Rule 200.12 of the Uniform Rules for Courts Exercising Criminal Jurisdiction”.
The conceded intentional violation of a court order due to the unilateral view that the order is a nullity (a view never expressed until a sanctions motion was made) provides an appropriate basis for the imposition of sanctions. It is therefore ordered, that the People are precluded from offering into evidence, bringing into the courtroom, or eliciting testimony about any tangible personal property, other than controlled substances, in existence as of the date of the People’s affidavit, April 4, 1996, and which were then in the custody or control of *265 the People. The People are not precluded from introducing controlled substances.
The court has distinguished between drug and nondrug evidence based upon the ease with which the former may be obtained from the arresting agency and held at the People’s office. The security and chain of custody requirements associated with nondrug evidence are clearly less stringent than those with controlled substances themselves. The burden of obtaining and making available such nondrug evidence as has been precluded here is clearly lesser than is required for drug evidence. That burden could easily have been discharged had the court’s order been considered an order dated February 5, 1996, rather than being unilaterally and silently deemed a nullity until the filing of the People’s affidavit dated April 4, 1996.